**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case Nos. 21-cr-178** |
| | : | **21-mj-011** |
| **MARKUS MALY,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## <u>UNITED STATES' OPPOSITION IN SUPPORT OF PRETRIAL DETENTION</u>

Defendant Markus Maly is a danger to the community and law enforcement, as he already has prior convictions for assaulting law enforcement. Maly—who has a lengthy and violent criminal history—sprayed law enforcement officers on January 6, 2021 and assisted Defendant Jeffrey Brown, 21-cr-178, in abusing and spraying law enforcement officers in the Lower West Terrace tunnel. For these reasons, the government respectfully requests that this Court continue to detain the defendant pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(a) (felony involving a dangerous weapon). As explained below, no conditions or combination of conditions can ensure the community's safety or his return to this jurisdiction for future court proceedings. As such, he should be detained pending trial.

This Court issued the instant Complaint against Defendant Maly, charging him with Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon in violation of 18 U.S.C. §§ 111(a) and (b); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Entering and Remaining in a Restricted Building or Grounds, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, and Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. §§ 1752(a)(1), (2), and (4)); and Disorderly Conduct on Capitol Grounds, Impeding Passage Through the Capitol Grounds or Buildings, and Act of Physical Violence in

the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(D), (E), and (F)) stemming from

Defendant's involvement in the insurrection at the United States Capitol on January 6, 2021.

On January 26, 2022, FBI agents arrested Defendant in Fincastle, Virginia and brought

him before a U.S. Magistrate Judge in the Western District of Virginia for an initial appearance,

detention hearing, and removal to this District.  After hearing arguments from the parties,

Magistrate Judge Robert S. Ballou ordered Defendant Maly detained as a danger to the

community.  Minute Entry, *United States v. Maly*, Case No. 22-mj-000006 (W.D. Ky. Jan. 26,

2022).  Defendant has not yet had an initial appearance in the District of Columbia.

## I. FACTUAL BACKGROUND

### A. The Attack on the United States Capitol on January 6, 2021

The United States Capitol is secured 24 hours a day by U.S. Capitol Police.  Restrictions

around the U.S. Capitol include permanent and temporary security barriers and posts manned by

U.S. Capitol Police.  Only authorized individuals with appropriate identification are allowed

access inside the U.S. Capitol.  On January 6, 2021, the exterior plaza of the U.S. Capitol was

also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S.

Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session,

elected members of the United States House of Representatives and the United States Senate

were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral

College for the 2020 Presidential Election, which had taken place on November 3, 2020.  The

joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m.,

the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice

President Michael Pence, who was also the President of the Senate, was present and presiding, first in the joint session and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and the U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

During the violent protest, several individuals were wearing bulletproof vests and anti-tear gas masks, and some were armed with weapons including bats, pepper spray, sticks, and zip ties.  Also, during the protest, several law enforcement officers were assaulted and injured by these violent protestors while attempting to protect the U.S. Capitol and the individuals inside of the building.  These assaults occurred both inside of the Capitol, as well as on the steps outside

of the Capitol and the grounds of the Capitol.  The Defendant, as detailed below, is currently

charged with multiple instances of assault, as well as other criminal violations.

### B. Markus Maly Identified in BOLO AFO-324

On a public-facing FBI website designed to seek information about individuals who

participated in the January 6, 2021 riot at the U.S. Capitol, FBI Washington posted photographs

of AFO-324, who was involved in spraying an unknown chemical irritant at a line of police

officers outside of the Capitol Building.  A tip from the DC Metropolitan Police advised that the

subject AFO-324 could possibly be MARKUS MALY.  Compl., Dkt. 1, 1.

## Photograph #324 - AFO A

The FBI is seeking to identify individuals involved in the riots at the U.S. Capitol on January 6, 2021, including those who assaulted federal law enforcement officers. Call 1-800-CALL-FBI or visit tips.fbi.gov to submit information. Reference the assault on federal officer (AFO) photo number when calling or submitting information online. More at fbi.gov/capitolviolence



Size: 4KB

*Image 1 – Photograph of AFO-324 from FBI website (https://www.fbi.gov/wanted/capitol-violence-images/capitol-324a.jpg/view)*

Footage from January 6, 2021, shows AFO-324 wearing a dark colored jacket with a grey

hood or hooded sweatshirt underneath.  At times, AFO-324 also wore a black winter hat or

"beanie" and a white cowboy style hat with the words "TRUMP 2020" printed on the front and

what appears to be "TEAM TRUMP" printed on the back, with an American flag pattern printed

on the underside.  Online sleuths identified this subject as #JohnSprayne and #HackDempsey.



*Image 2 – Screenshot of AFO-324*
*(https://jan6attack.com/individuals/johnsprayne/1aeG4GVOLzeseLYFF_J-Pbh3qQfLSMu6W.png)*

AFO-324 carried a black canister that was consistent with what is commonly known as "bear spray" or pepper spray.

Below is the same subject, AFO-324, from D.C. Metropolitan Police's Persons of Interest in Unrest-Related Offenses posting:



## PERSONS OF INTEREST IN UNREST-RELATED OFFENSES

**Federal Charges Pending due to Insurrection at the US Capitol**
January 6, 2021
Approximately 2:37 pm
U.S Capitol Grounds
100 block of First Street, NW



Anyone who can identify these individuals or who has knowledge of this incident should take no action but call police at (202) 727-9099 or text your tip to the Department's TEXT TIP LINE at 50411. The Metropolitan Police Department currently offers a reward of up to $1,000 to anyone who provides information that leads to the arrest and indictment of the person or persons responsible for a crime committed in the District of Columbia.

*Image 3 – Screenshot of AFO-324 from D.C. Metropolitan Police Posting[1]*

After reviewing the photos and videos of AFO-324 on January 6, 2021, FBI reviewed known photographs of Maly from law enforcement databases.  After reviewing 1) a 2020 Booking Photo from Roanoke County, Virginia Sheriff's Office (Image 4 below); 2) a 2017 Booking Photo from Virginia (Image 5 below); and 3) a 2008 driver's license, and comparing them to photographs of the individual identified by the FBI as AFO-324, the photographs of Maly are consistent with the individual identified by the FBI as AFO-324.

---

[1] This post was created prior to FBI's involvement; the time is approximate.



*Image 4, 2020 Booking Photo*                    *Image 5, 2017 Booking Photo*

Based on the tips that had been provided above, law enforcement took additional steps to identify Maly.

FBI identified a phone number ending in -6777,[2] which is associated with Maly through phone subscriber records and cross referenced to his email and social media records.  Records obtained pursuant to legal process showed an email associated with the number ending in -6777 had an associated email of malymaly666@XXXXX. com[3] and an associated name of "MARK MALY". Records received from the email account revealed that the account associated with malymaly666@XXXXX.com belonged to an email account registered in the name of "Mark Maly." The email account also lists a recovery SMS phone number that matches the number ending in -6777.  Pursuant to legal process, law enforcement learned that the person carrying the phone ending in -6777 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the United States Capitol Building.

FBI showed the below images to Officer Dakota Kidd, Roanoke County Police Department (RCPD).  Officer Kidd was asked if he recognized the subject as Markus Maly from

---

[2] The government is in possession of a full phone number, but uses the last four digits here due to the public nature of this filing.
[3] The government is in possession of a full email address, but partially anonymized it here due to the public nature of this filing.

a previous in person law enforcement encounter with Maly.  Officer Kidd reviewed the RCPD

file detailing the encounter with Maly.  Officer Kidd remembered that he "served papers" on

Maly in February 2020 for a charge of failure to appear.  Officer KIDD stated Maly had longer

hair when he encountered him, but he recognized the subject pictured below as being Maly from

the aforementioned law enforcement encounter.  The below image is from

https://jan6attack.com/individuals/johnsprayne/1x0BshB-Uq_bubdvT0lEFQ9vht5ChudBS.jpeg

which is a cropped picture of  *Image 3 – Screenshot of AFO-324 from D.C. Metropolitan Police

Posting.*

### C. Defendant Maly's Assault on Law Enforcement Officers

A review of photos and videos around the Capitol show Maly holding the canister of

pepper spray near a line of police officers.  Maly then sprays the canister at the police officers.

Maly sprayed towards a D.C. Metropolitan Police Officer, Officer Victim 1, as seen on body

camera footage.

This image below is taken from a video from the body camera of MPD Officer Victim 1.

In the video, Maly can be seen moving about the crowd and displaying a black spray can towards

the officers present. The image below, taken from the video at 42 minutes and 3 seconds into the

video, shows Maly in the right side of the image pointing a spray can directly at the officers at

approximately 14:35:44 (2:35:44 p.m.) as displayed on the time stamp of the body camera video.



*Image 6 – Screenshot from Body Camera*

The below images 7 and 8 are from the same body camera footage and shows Maly holding the spray can pointing it directly at the police officers at approximately 14:35:47 (2:35:47 p.m.) as displayed on the time stamp of the body camera video.



*Image 7 – Screenshot from Body Camera*



*Image 8 – Screenshot from Body Camera*

The below image 9 is from the same body camera footage that shows chemical spray that was just sprayed on MPD Officer Victim 1's shield at approximately 14:35:49 (2:35:49 p.m.) as displayed on the time stamp of the body camera video.  This image depicts what occurred approximately two seconds after the above image capturing Maly pointing the spray directly at the police officers.



*Image 9 - Screenshot from Body Camera*

The below images (10-13) are screenshots from a video on "theresistance.video" and shows a different angle where Maly pointed and appeared to spray presumed chemical spray at law enforcement officers on the Lower West Terrace of the Capitol on January 06, 2021 at time stamp 49:16.



*Image 10 – Screenshot from Resistance Video*



*Image 11 – Screenshot from Resistance Video*



*Screenshots from Resistance Video*
*Image 12                          Image 13*

On January 6, 2021, between approximately 15:09 and 15:16, a man who matches Maly's description appeared on U.S. Capitol CCTV footage in the Lower West Terrace Tunnel. The Lower West Terrace Door is an outdoor area on the west side of the U.S. Capitol Building. On January 6, 2021, all parts of the Lower West Terrace were considered "restricted grounds" and were not accessible to the public. The Lower West Terrace Door led into the U.S. Capitol Building through a tunnel. Between approximately 15:09 and 15:16, the Lower West Terrace Door was heavily guarded by U.S. Capitol Police and MPD personnel, who had formed a defensive line to prevent unauthorized access into the U.S. Capitol Building via the tunnel.

The below image, taken from 3 minutes and 30 seconds into the video, shows Maly near the center of the frame in a white cowboy hat, with "Trump 2020" written on the front of the hat,



*Image 14 – CCTV Screenshot*

The below image, taken from the same video at 4 minutes and 51 seconds, shows Maly in the left center of the image handing a black spray can to indicted Defendant Jeffrey Brown's outstretched hand:



*Image 15 – CCTV Screenshot*

The below image, taken from the same video at 9 minutes and 49 seconds, shows Maly in center of the image, exiting the tunnel with what appears to be a Police riot shield.



*Image 16 – CCTV Screenshot*

The below image taken from "Just Another Channel", was submitted as a public tip to the FBI.  In this image, Maly is seen exiting the tunnel at the Lower West Terrace of the Capitol, with what appears to be the same Police riot shield seen above.



*Image 17 –Screenshot of Resistance video found at Just Another Channel*

In addition to the photo evidence above, the government will also submit video evidence.

**D. Defendant Maly's Statements on Social Media**

Pursuant to legal process, FBI reviewed the Facebook account for the username "Mark Maly," believed to be Maly's Facebook account.  The Facebook account used the same email and phone number associated with Maly and described above.

A review of the above Facebook account showed communications and posts about Maly's attendance at the Capitol on January 6, 2021.  On January 7, 2021, he commented on a posting and stated in part "There were lots of pissed off patrios [sic] there and we wanted our voices to be heard.  I myself one [sic] of them. We were there to support President Trump and the voting process.  A voting process that was hijacked and stolen from us."

17

On January 7, 2021 Maly also engaged in conversation with one of his contacts (Contact 1)[4].  Maly wrote "No I didn't go inside.  I did have a riot shield but half way back to the bus a cop say [sic] me and took it from me . . ."  Contact 1 responded with "Should have stood your ground with it."  Maly replied "I stood my ground and went back for seconds and thirds even."

The Facebook account also included conversations between Maly and someone believed to be his girlfriend on or about January 6, 2021.  On January 6, 2021 at approximately 16:16 EST, his girlfriend mentioned individuals breaking through Capitol barricades; Maly responded with "We took the fuckin capital…" At approximately 16:32 EST, Maly messaged his girlfriend in response to her concern about violence at the Capitol, and wrote "I know… I've got stories though," and "I was so fun…",  "It.."

Maly posted multiple photos and videos that appear from be from January 6, 2021 at the Capitol, including a selfie-style photograph that he shared on January 19, 2021.  As seen below, he is wearing clothing consistent with the above subject identified as Maly at the Capitol Building on January 6, 2021 and the scaffolding in the background is consistent with the scaffolding that was present that day, having been erected on the West Front of the Capitol Building for the presidential inauguration

---

[4] The government knows the identity of the contact, but the name is not stated here due to the public nature of this filing



*Image 16 – Photo from Maly's Facebook*

A review of the Google account associated with malymaly666@XXXXX.com revealed photographs and video of a subject identified as Maly at the Capitol Building on January 6, 2021.

### E. Defendant Maly's Arrest and Confession

On January 26, 2022, the FBI arrested Markus Maly and executed a search warrant at his residence.  Upon his arrest, Maly admitted that he went to the Capitol on January 6, 2021.  He said that he saw people being gassed while he was there.  He said he wore a white "Trump" cowboy hat—that he no longer has—on January 6.  When shown *Image 3* from the Statement of Facts, he stated "that resembles me if it's not me."  He told agents that he still had the black backpack he wore on January 6 in his garage and that he had picked up a canister or two of spray from the ground and sprayed them at police officers.  He also admitted to taking a police shield that he had planned to keep as a trophy before a police officer took it from him.

While speaking to the agents, he confirmed that his phone number is the same one FBI identified ending in -6777 and his email was the same that agents identified, malymaly666@xxxxx.com.  Defendant Maly told the agents it was "bullshit" that he is going to jail for protesting a stolen election.

On the same day, FBI agents interviewed his girlfriend.  She stated that Maly did go to Washington D.C. on January 6, 2021 and that when he returned home, his clothes smelled strongly of pepper spray.  She was shown multiple pictures of him from January 6, 2021 and identified him in one of them.

Agents ultimately found the backpack and jacket that Maly is believed to have worn on January 6, 2021 when executing the search warrant.

### F. Defendant Maly's Criminal History

Defendant Maly has an extensive and varied criminal history and contacts with law enforcement dating back to 1992.  W.D. Ky. Pretrial Services Report.  He has convictions in Virginia, Florida, and California and has a history of probation violations and failures to appear.

Defendant has been convicted of crimes such as possession of controlled substances; battery; burglary; two separate charges of battery of law enforcement; traffic offenses; trespassing; and aggravated assault with a deadly weapon.  He has also been charged with multiple counts of domestic violence—although he was not convicted.  Despite this, the nature of the allegations are troubling, particularly in the context of the defendant's other convictions. Furthermore, he has most recently been convicted of two failures to appear in Virginia and has been held in contempt of the court.

## II. ARGUMENT

### A.  Applicable Statutory Authority

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person

and the community … in a case that involves … (A) a crime of violence…for which a maximum

term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that

has as an element of the offense the use, attempted use, or threatened use of physical force

against the person or property of another or (B) any other offense that is a felony and that, by its

nature, involves substantial risk that physical force against the person or property of another may

be used in the course of committing the offense."  Defendant's assault with a dangerous weapon

on law enforcement is a crime of violence pursuant to 18 U.S.C. § 3142(f)(1)(E).  Defendant has

been charged with multiple violence offenses under 18 U.S.C. § 111 and 18 U.S.C. § 1752, to

include §111(b).

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are

conditions of release that will reasonably assure the appearance of the person as required and the

safety of any other person and the community – an inquiry that considers (1) the nature and

circumstances of the offense charged, (2) the weight of the evidence, (3) his history and

characteristics, and (4) the nature and seriousness of the danger posed by his release.

The United States seeks detention because no combination of conditions will assure that the

defendant will not pose a danger to the safety of the community.

**B.  The 18 U.S.C. § 3142(g) Factors Weigh in Favor of Detention.**

The government proffers the pretrial services report from the Western District of

Kentucky, which recommends detention; the Magistrate Judge's ruling (a transcript will be

provided to the Court); the complaint and statement of facts, video evidence to be submitted, and

the facts proffered here in support of establishing the requisite clear and convincing evidence

requiring the defendant's detention.

i. <u>The Nature and Circumstances of the Offense</u>

The defendant's crimes are serious and cannot be viewed in isolation—he was one of thousands of individuals who descended upon the Capitol on January 6 to obstruct a cornerstone process of our democracy. The defendant was not just a part of the crowd or someone who got caught up in the moment. He traveled from his home in Fincastle, Virginia to Washington, D.C. by bus.  He was at the front of the crowd that assaulted police lines on the West Terrace.  He focused his violent assaults against law enforcement officers that day.  He aimed and sprayed a chemical irritant at law enforcement on the Lower West Terrace Plaza and then continued to pursue law enforcement to the Lower West Terrace Tunnel where he and fellow rioters tried to breach the building.  In the tunnel, video evidence shows Defendant Maly and Defendant Peter Schwartz (21-cr-178) both helping Defendant Jeffrey Brown (21-cr-178) spray law enforcement in the tunnel by handing spray to Defendant Brown.  When exiting the tunnel, Defendant Maly took a police shield with him.

The nature and circumstances of this offense weigh heavily in favor of detention. In *United States v. Chrestman*, this court articulated a set of factors for evaluating the nature and circumstances of offenses committed at the Capitol, and how those factors bear on detention. 525 F. Supp. 3d 14, 26-27 (D.D.C. 2021). Those factors include whether the defendant: (1) is charged with felony offenses, or solely with misdemeanors; (2) engaged in prior planning for his criminal conduct before arriving at the Capitol; (3) carried or used a dangerous weapon at the Capitol; (4) coordinated with other participants before, during, or after the riot; (5) assumed a formal or de facto leadership role with respect to the riot; and (6) injured, attempted to injure, or

threatened injury to others; damaged or attempted to damage property; actively threatened or confronted law enforcement officers; or promoted or celebrated efforts to engage in such conduct. *Id.*

Almost all of the *Chrestman* factors put the defendant in a more serious category and demonstrate his dangerousness. First, he has been charged with multiple felonies and crimes of violence. Second, Defendant engaged in planning prior to arriving at the Capitol, namely traveling by bus to D.C.  He described the purpose of his travel as being there to "support President Trump and the voting process"—which he said was "hijacked and stolen."  When given the opportunity, he attacked officers with the mob of rioters around him.  As the Court said in *Chrestman,* "[t]hese motives and steps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense, as a premeditated component of an attempt to halt the operation of our democratic process, and the danger a defendant poses not just to the community in which he resides, but to the American public as a whole."  *Id.* at 26.

Third, his actions demonstrated a dangerous hostility to law enforcement. The Court noted in *Chrestman*, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement…". *Id.*  The defendant repeatedly confronted police with, menacing behavior and an assault.

In particular, using chemical spray against law enforcement is an extremely serious offense.  In a recent decision, Judge Contreras noted that the court could not find a case in which a Capitol rioter used pepper spray on law enforcement officers and was released pending trial

when the government sought detention. *See United States v. Brown*, --- F. App'x ---, 2021 U.S. Dist. LEXIS 167405, at *14-15 (D.D.C. Sept. 3, 2021).[5]

The nature and circumstances of the offense in this case therefore weigh in favor of detention.

ii. <u>The Weight of the Evidence Against the Defendant</u>

The weight of the evidence weighs in favor of detention. He is seen on camera spraying a chemical irritant at police officers. He was photographed/video recorded from multiple camera angles. The clothes he is wearing while he assaults officers matches his clothing in his social media post. A witness who knows him personally recognized the defendant in the videos and/or photos. Defendant also shared thoughts through social media on his involvement in January 6. In particular, he stated "[w]e took the fuckin capital…" and that it was "so fun." He also told one of his contacts on Facebook that he took a police riot shield but had to give it back to law enforcement. When his Facebook contact told him he should have "stood [his] ground with it," Defendant Maly replied that he "stood [his] ground and went back for seconds and thirds even." Upon his arrest, he confessed to the agents that he sprayed law enforcement and confirmed what

---

[5] The Memorandum Opinion in *Brown* notes four other cases in which rioters who deployed chemical spray at law enforcement were ordered detained: *United States v. Khater*, --- F. App'x ----, 2021 WL 3711402, at *1 (D.C. Cir. July 26, 2021); *United States v. Quaglin*, 851 F. App'x 218, 219 (D.C. Cir. June 24, 2021); *United States v. Worrell*, 848 F. App'x 5, 6 (D.C. Cir. June 14, 2021); and *United States v. Gieswein*, 2021 U.S. Dist. LEXIS 139235, at 3168148, at *7, *10, *35, *50 (D.D.C. July 27, 2021). *Brown*, 2021 U.S. Dist. LEXIS 167405, at *14-15. The government is aware of at least five other such cases: *United States v. Caldwell*, 1:21-cr-00181-CKK; *United States v. Lazar*, 1:21-cr-00525-ABJ; *United States v. McHugh*, 1:21-cr-00453-JDB; *United States v. Schwartz*, 1:21-cr-00178-APM; and *United States v. Boughner*, 22-cr-00020-TSC. Additionally, the defendant in *United States v. Mitchell Todd Gardner, II*, 1:21-cr-00622-APM (including an allegation that the defendant deployed a lachrymal agent against law enforcement officers in the Lower West Terrace tunnel) is on pretrial release because the government did not seek detention.

he was wearing that day.  Collectively, there is strong evidence of guilt and a conviction is likely. This factor also supports detention.

    iii. <u>The History and Characteristics of the Defendant</u>

Defendant has a recurring pattern of criminal activity and probation violations beginning in 1992. He has been convicted of range of crimes such as possession of controlled substances; battery; burglary; two separate charges of battery of law enforcement; traffic offenses; trespassing; and aggravated assault with a deadly weapon.

Not only does Defendant have an extensive criminal history, he also has a history of probation violations—showing that he is not amenable to supervision.  Defendant's prior and recurring history of assaultive behavior—and specifically against law enforcement—counsels that this defendant resorts to violence when he sees fit. In the instant case, Defendant committed violence on law enforcement officers to advance a political goal.  And he thought it was "so fun."

Defendant has ties to the district of his arrest, but does not appear to have ties to Washington, D.C. Even in the district of his arrest, Defendant's has shown that he does not respect the court orders or law enforcement, which is evident from his multiple failures to appear and being held in contempt.  Another startling fact in his background is that he has previously been a member of a skinhead group.  The history and characteristics of Defendant weigh in favor detention.

    iv. <u>The Nature and Seriousness of the Danger Posed by Defendant's Release</u>

The fourth factor, the nature and seriousness of the danger to any person or the community posted by a defendant's release, also weighs in favor of Defendant's detention.  The charged offenses involve repeated violent attacks on law enforcement. The Facebook

conversations and posts also demonstrate Defendant's unapologetic attitude regarding his criminal activity that day.  In addition, Defendant used a dangerous weapon, chemical spray.

Given the above assessment of all four relevant factors, no conditions or combination of conditions can effectively ensure the safety of any other person and the community. Based on these factors, anything short of detention would be insufficient to assure his appearance in D.C. and keep the community safe.

### III. CONCLUSION

WHEREFORE, the United States respectfully requests that the Court DENY the Defendant's Motion for Bond Review.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     /s/ Mitra Jafary-Hariri
MITRA JAFARY-HARIRI
Assistant United States Attorney, Detailee
MI Bar No. P74460
211 W. Fort Street, Suite 2001
Detroit, MI 48226
mitra.jafary-hariri@usdoj.gov, (313) 226-9632