UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case Nos. 21-cr-178 |
| | : | |
| MARKUS MALY, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO MARKUS MALY'S MOTION TO SUPPRESS STATEMENTS

On August 30, 2022, the defendant, Markus Maly, filed a motion to suppress statements he made after being arrested in the instant case. *See* Def't Mtn to Supp., Dkt. 124. Because he voluntarily made those statements after signing a waiver of his rights, his motion should be denied.

### I.   FACTUAL AND PROCEDURAL HISTORY

Defendant Markus Maly, a 48-year-old flooring installer from Fincastle, Virginia, traveled from his Virginia home on January 6, 2021, to Washington, D.C., where he attended the Stop the Steal rally. After the rally, he went to the U.S. Capitol, where he joined violent rioters on the Lower West Terrace. He was toward the front of a group of rioters who were pushing at and spraying a line of law enforcement officers with canisters. Maly had a black can that he sprayed at officers at approximately 2:35pm.

Approximately thirty minutes later, Maly had migrated to the "tunnel" or entryway to the building on the Lower West Terrace. The tunnel was heavily guarded by law enforcement officers who were trying to prevent rioters from gaining access into the building. Maly stood in the entryway to the tunnel and handed a black can to codefendant Jeffrey Brown. A few minutes later, he exited the tunnel with what appeared to be a police riot shield.

The day after the riot, Maly posted on Facebook, stating in part, "There were lots of pissed

1

off patrios [sic] there and we wanted our voices to be heard.  I myself one of them.  We were there to support President Trump and the voting process.  A voting process that was hijacked and stolen from us."  In messages with another Facebook user, he acknowledged, "I did have a riot shield but half way back to the bus a cop say [sic] me and took it from me."  The other user said, "Should have stood your ground with it," to which Maly responded, "I stood my ground and went back for seconds and thirds even."

Maly was charged by Criminal Complaint on January 13, 2022, with the following violations: 18 U.S.C. § 111(a)(1) and (b) (assaulting officers using a dangerous weapon); 18 U.S.C. § 231 (civil disorder); 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding); 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted area); 18 U.S.C. § 1752(a)(2) (disorderly conduct in a restricted area); 18 U.S.C. § 1752(a)(4) (engaging in physical violence in a restricted area); 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building); 40 U.S.C. § 5104(e)(2)(E) (impeding passage through a Capitol building); and 40 U.S.C. § 5104(e)(2)(F) (act of physical violence in a Capitol building).  *See* Criminal Compl., Case No. 1:22mj-11.

He was arrested on January 26, 2022 at his home in Fincastle, Virginia.  After being advised of his rights, he signed an "Advice of Rights" form, which was witnessed by two FBI agents.  *See* Maly Advice of Rights Form, attached as Exhibit 1.  He made a number of incriminating statements, which are described in more detail below.  Agents also searched his home pursuant to a search warrant issued in the Western District of Virginia.

Maly now seeks to set aside those statements in advance of trial.  *See* Def't Mtn to Suppress, Dkt. 124.  He claims that he was not advised of any of his rights and that he did not sign a waiver of rights form, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  *Id.* at 1.  Because these claims are not true, his motion should be denied.

## II. LEGAL STANDARD

To overcome a motion to suppress, the government must prove by a preponderance of evidence that a defendant's waiver of Miranda rights was voluntary, knowing, and intelligent. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986). A waiver of Miranda rights is voluntary if it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver is knowing and intelligent if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. However, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

An implied waiver can be found from the particular facts and circumstances of the accused and the interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *North Carolina v. Butler*, 441 U.S. 369 (1979). Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent. *Berghuis*, 560 U.S. at 384. "An express written . . . statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver." *Butler*, 441 U.S. at 373.

## III. ANALYSIS

Maly raises one simple and meritless suppression claim. He makes no claims regarding the nature of his waiver in this case. Instead, despite the Advice of Rights form that he signed the morning he was arrested, he baldly asserts that he was simply never advised of his rights and that he "does not believe he signed any form." Def't Mtn to Supp. at 1.

His assertion is at odds with the truth. Maly provided a voluntary, knowing, and

3

intelligent waiver of his right to remain silent when he was interviewed by FBI agents on January 26. The Court should therefore deny his motion.

The home where Maly was residing is located in a rural area, atop a hill, approximately half an hour away from Roanoke, Virginia. The red circle on the Google Satellite map below denotes the home:



Agents arrived at his home that snowy January morning at approximately 6:00am, in order to execute an arrest warrant for Maly and a search warrant for his home. Def't Mtn to Supp. at 1; *see also* FBI Report Fincastle SW Execution, attached as Exhibit 2. When agents (including a "Special Weapons and Tactics" or SWAT team) arrived, they arrested Maly and then worked to secure the house and area surrounding the house. This process, which included safely and efficiently clearing the house of its occupants, took approximately an hour and a half. *Id*.

Before securing the premises, but after arresting Maly, agents placed Maly in first a SWAT car, and then an FBI car. After advising him of his rights via a standard FBI Advice of Rights form, agents uncuffed him and he signed his name acknowledging that he not only understood his

rights under *Miranda*, but that he consented to waiving them.  *See* Maly Advice of Rights Form.

The one-page Advice of Rights form that Maly signed set forth a thorough recitation of his rights.  *Id*.  Below this recitation of his rights was a section entitled "Consent," with Maly's signature acknowledging that he had read the statement of his rights, and that he understood what they are.  *Id*.  He further acknowledged that he was willing to answer questions without a lawyer present.  *Id*.  His signature was witnessed by two FBI agents.  *Id*.  The time listed at the top of the form is "0632," and the time attested to by the two FBI special agents as witnesses, at the bottom of the form, is "6:38a."  This timing appears to be consistent with agents advising him of his rights, situating him in the car so he could review and sign the form, uncuffing him so that he could sign the form, and recuffing him so that agents could sign the form as witnesses.

After acknowledging and waiving his *Miranda* rights, Maly was interviewed by two agents in the car for approximately thirty minutes to one hour.  The interview was not recorded, but one of the agents wrote a report of the interview.  *See* FBI Report of 1/26/2022 Maly Interview, attached as Ex. 3.  He admitted to being at the Capitol on January 6, 2021.  *Id*. at 1.  At one point, he stated "I should probably lawyer up," but continued speaking.[1]

He admitted to spraying police officers with canisters.  *Id*. at 2.  He also admitted that he had received a police shield, and was planning on keeping it as a trophy, until a police officer confiscated it.  *Id*.  He made other statements as well.

At the end of the report, the authoring agent noted that "Maly was provided with and signed the FD-395; FBI Advice of Rights form prior to the start of the interview."  *Id*. at 3.

This chain of events more than satisfies the requirements of *Miranda* and forecloses Maly's

---

[1] Although Maly does not raise this argument, his ambiguous statement did not constitute an invocation of counsel. *See Davis v. United States*, 512 U.S. 452 (1994).  If the Court decides that Maly should have an opportunity to advance such a claim, the government reserves the right to respond separately.

suppression claim. Maly was informed of his rights, and he voluntarily, knowingly, and intelligently waived them by signing the Advice of Rights form. He has been in possession of the form for at least four months, since the government produced it in discovery, and he does not dispute the authenticity of his signature or the form itself. Therefore, this explicit, written waiver of his *Miranda* rights was more than sufficient to meet the requirements of the law. *See Butler*, 441 U.S. at 373.

## IV.  CONCLUSION

For the reasons set forth above, this Court should deny Maly's motion to suppress his post-arrest statements.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: *s/ Cindy J. Cho*
CINDY J. CHO
Assistant United States Attorney
NY BAR #4751053
555 4th Street NW
Washington, DC 20530
(317) 246-0107
Cindy.Cho@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2022, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

                                                  */s/ Cindy J. Cho*
                                                Cindy J. Cho
                                                Assistant United States Attorney