IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

      v.                              Docket No. 1:21-CR-178-APM-3

Markus Maly

      Defendant's Response to government's request to impose a fine

The issue of fines levied against those convicted in the January 6 events has sparked considerable interest in the past several weeks. Counsel has received several press inquiries focused solely on this topic, and for some reason, Mr. Maly's case has garnered more press attention than other similarly situated defendants. The issue appears simple to counsel, which is why Mr. Maly did not address the fine in his sentencing memorandum. In addition, when facing a recommended sentence far above ten years, a fine of $16,000 appears minor in comparison and ought to be given considerably less weight. In any event, Mr. Maly asks this court not to impose any fine as he has no ability to pay one.

      The government cites to *United States v. Seale* in support of its argument that Mr. Maly ought to pay a fine. The case is inapposite because the *Seale* court simply found that a defendant's potential earning capacity, supported by evidence, even if disclaimed, constituted evidence that the defendant had the "earning capacity" necessary to pay some fine. 20 F.3d 1279, 1285 (3rd Cir. 1994). But the *Seale* court specifically rejected imposing a fine solely to prevent a defendant from

profiting from his criminal activity. *See id.* at 1288. Thus, *Seale* does not support the government's position—it starkly undermines it.

*Seale* involved the prosecution and guilty pleas of a husband and wife who kidnapped, killed, and attempted to extort for millions of dollars the ransom of an Exxon Mobil Executive. *See id.* at 1281. The defendants extensively planned how they could commit the crime and avoid paying taxes should their efforts be successful. *See id.* Mrs. Seale cooperated with the government and pleaded guilty and was sentenced to 20 years and a $500,000 fine. Mr. Seale was sentenced to 95 years and a fine of $1.75 million. Even though they were currently unable to pay a fine at the time of their sentencing (or, seemingly, the appeal), the defendants "as a result of their crime . . . may stand to earn a considerable sum by selling their stories." *See id.* at 1282.

The fines imposed by the district court exceeded the guidelines and were the statutory maximum possible for each defendant. *See id.* The court of appeals ultimately vacated the fines imposed, finding that the court did not rely on sufficient evidence to justify the amount even if the court correctly found that the defendants had the ability to pay a fine. *See id.* at 1289. And the court did not find persuasive the court's justification that the fine was imposed to "ensure that Mr. Seale would not profit from any story" related to his crime. *See id.* at 1288. If that were a sufficient basis to impose a fine, the court would have affirmed the fine rather than vacated it.

*Seale* does not stand for the proposition that the court can impose a fine if it appears that a defendant may profit from his criminal activity or has sought to earn such a profit. It merely allows the court to consider a defendant's likely earning capacity, including whether a defendant has sought to or might be able to earn a substantial amount of money for selling the rights associated with their story of their crime.

Mr. Maly has not sought to capitalize on his case or to profit from his convictions, nor has he sensationalized his case. Unlike in *Seale*, there is no reason to believe that Mr. Maly will receive any substantial amount of money. The money he has received thus far is paltry compared to the cost of living and his lost income from being held on bond and held after his conviction—just over $16,000 in just over seven months since he was convicted. If he had legal fees, this sum would hardly scratch their surface. As it stands, the money was able to pay debts his family owed and incurred as a result of him being held on bond and incarcerated after his conviction. The money has been spent, and there is no reason to believe that Mr. Maly will be able to raise a similar amount in the future. Indeed, his story has been told and circulated and likely heard by anyone who was willing to donate. Why should we think he would receive more, especially if those donors are told that the money will be taken by the federal government? The fact that he has raised $16,000 shows that his story was worth approximately that amount, and there is no reason to believe he will earn more. And Mr. Maly does not have access to that money—as counsel has been told that the money was spent to cover past rent and other bills.

Additionally, Mr. Maly is not relying on any acts he committed when seeking donations for his family's living expenses. Unlike the defendants in *Seale*, Mr. Maly has maintained his pleas of not guilty and denies committing a crime. The Seales may have been able to earn a substantial sum of money for telling the story surrounding how they committed their crime. Mr. Maly has been able only to earn a few thousand dollars by telling his story of how he was prosecuted—not his story of what he did on January 6.

In stark contrast to Mr. Maly asking for funds to help his family's living expenses, former President Trump has received millions based on his false, flagrant, and inciteful claims that he won the 2020 presidential election. *See* Maggie Haberman, Alan Feuer, and Jonathan Swan, *Prosecutors in Jan. 6 Case Step up Inquiry Into Trump Fund-Raising*, N.Y. Times. April 28, 2023, available at nytimes.com/2023/04/28/us/politics/jan-6-prosecutors-trump-fund-raising.html.  If the government wants to claw back earnings from those who profited from crimes related to January 6, there is any easy target who actually has the ability to pay. And the court should not only impose these fines only on people who were so poor they were unable to retain private counsel and do not have any personal bills for legal services—doing so would have the perverse effect of penalizing the destitute while the affluent are let alone. Then again, doing that is exactly what this country's criminal legal system does best.

Respectfully submitted,
/s/ Benjamin Schiffelbein
Counsel for Mr. Maly
Benjamin_Schiffelbein@fd.org